THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NELSON ROJAS, Appellant. [915 NYS2d 602]—

Appeal by the defendant from a judgment of the Supreme Court, Queens County (Lewis, J.), rendered May 1, 2009, convicting him of assault in the second degree, after a nonjury trial, and imposing sentence.

Ordered that the judgment is reversed, on the facts, the indictment is dismissed, and the matter is remitted to the Supreme Court, Queens County, for the purpose of entering an order in its discretion pursuant to CPL 160.50.

In a six-count indictment, the defendant was charged with attempted murder in the second degree, assault in the first degree (two counts), assault in the second degree (two counts), and criminal possession of a weapon in the fourth degree. After a nonjury trial, the defendant was acquitted of all charges except for assault in the second degree pursuant to Penal Law § 120.05 (1), of which he was found guilty. On appeal, the defendant contends that the verdict of guilt on this count was against the weight of the credible evidence inasmuch as the People failed to disprove his justification defense beyond a reasonable doubt (*see* Penal Law §§ 35.00, 35.15). Upon the exercise of our independent factual review power (*see* CPL 470.15 [5]), we agree.

"[W]eight of the evidence review requires a court first to determine whether an acquittal would not have been unreasonable. If so, the court must weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions. Based on the weight of the credible evidence, the court then decides whether the [trier of fact] was justified in finding the defendant guilty beyond a reasonable doubt" (*People v Danielson*, 9 NY3d 342, 348 [2007]; *see People v Bleakley*, 69 NY2d 490, 495 [1987]). "[T]he appropriate standard for evaluating [a] weight of the evidence argument is the same, regardless of whether the factfinder was a judge or jury" (*People v Zephyrin*, 52 AD3d 543, 543 [2008]).

Under the circumstances here, we find that an acquittal would not have been unreasonable, and further find that the verdict was against the weight of the credible evidence (*cf. People v Madison*, 61 AD3d 777 [2009]; *People v Zephyrin*, 52 AD3d at 543-544). The trial evidence established that on March 28, 2007, shortly after 6:00 P.M., the defendant and his friend Shahmel McLoud were in the defendant's car, stopped at a red light on 76th Street in Queens, when they heard a loud "bang" on the back of the car. The defendant parked his car on the side of the street, and he and McLoud exited the vehicle. They saw Julio Beltran, who was drunk and had just exited a nearby park. Beltran's friends, Hanz Cajas and Steven Orrego had also been drinking in the same park. When Beltran left the park, Cajas and Orrego got into an SUV with a man named "Jose" to look for Beltran. The SUV drove up 76th Street as the defendant was confronting Beltran for pounding on his car.

Cajas, Orrego, and Jose exited the SUV and at least one of them either hit a window on the defendant's car or threw objects at it. Orrego then punched McLoud. McLoud punched Orrego back and tried to run away. Orrego and two others chased McLoud and eventually had him on the ground, all three punching and kicking him. At some point, the defendant hit Cajas once on the back of the head with "The Club," a steering wheel locking device, causing Cajas serious physical injury.

At trial, the prosecutor conceded that the defendant and McLoud were the initial victims in this case, but argued that the defendant struck Cajas at a time when the fight had ended and there was no further danger to McLoud. In support of this theory, the People relied on the testimony of Norberto Lopez, who saw the initial confrontation from his home and ran outside to stop the altercation. Lopez testified that when he got outside, he saw three men punching and kicking McLoud "in [a] choreographed, crazy type of fighting." According to Lopez, the defendant had not exited his car at that time. Lopez pulled the three men off McLoud and they moved away. Suddenly, Cajas ran by and the defendant came after him and struck him in the back of the head with "The Club."

In contrast to Lopez's testimony, none of the witnesses who participated in the fight recalled Lopez being present during the incident. Further, Orrego testified that he and Cajas had chased McLoud together, and Cajas was standing next to Orrego while Orrego was hitting McLoud, who was trying to get up, when Cajas was struck from behind. Both the defendant and McLoud testified that Cajas was one of the three men attacking McLoud, and that while the other two were punching and kicking Mc-

Loud, Cajas was swinging a wrench at him. Although no wrench was recovered, two 911 calls supported the defense theory that someone from the SUV had a wrench. The defendant and McLoud were each treated for injuries at the hospital, and the responding officer's incident report stated that McLoud had been hit with a blunt object that was not "The Club."

Additionally, the defendant and McLoud testified that during the initial confrontation, Beltran had entered the defendant's car, and that the fighting commenced when the defendant told Beltran to get out of his car and Orrego punched the defendant, knocking him to the ground. The defendant testified that when the other three men began chasing McLoud, Beltran came out of the defendant's car with "The Club" and swung it at the defendant. Following the incident, Beltran's shirt was found in the defendant's car, and the prosecutor failed to provide an explanation for its presence that was consistent with the People's version of the incident.

The Supreme Court acquitted the defendant of attempted murder in the second degree, assault in the first degree, assault in the second degree pursuant to Penal Law § 120.05 (2), and criminal possession of a weapon in the fourth degree. In announcing its verdict of guilty with respect to count four, assault in the second degree pursuant to Penal Law § 120.05 (1), the Supreme Court implicitly found that the defendant was justified, stating the following: "it is the Court's determination based on that evidence that I find credibility [sic] that, in fact, while the defendant himself had a motivation different than the intent required, the Court does recognize that while defendant itself [sic] does not as to himself does not [sic] pose a danger to society at large, only to those who assault him or attempt to rob his friend, I find that there is in that count sufficient evidence, notwithstanding the justification charge, not to find legal justification but to find, in fact, guilt, and accordingly as to count four I find the defendant guilty."

Under the circumstances here, based on the weight of the credible evidence, we find that the People failed to disprove beyond a reasonable doubt that the defendant was warranted in using deadly force to defend his friend (cf. Matter of Y.K., 87 NY2d 430, 434 [1996]).

In light of our determination, we need not reach the defendant's remaining contentions. Covello, J.P., Eng, Chambers and Hall, JJ., concur.